RENDERED: MARCH 17, 2016
TO BE PUBLISHED
FINAL
DATE 4-7-16 EntGroumth,D.C.

# Supreme Court of Kentucky

## 2014-SC-000524-MR

CHRISTOPHER GRIBBINS          APPELLANT

ON APPEAL FROM MARION CIRCUIT COURT
V.          HONORABLE DAN KELLY, JUDGE
NO. 12-CR-00128

COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

Christopher Gribbins appeals as a matter of right from a judgment of the Marion Circuit Court sentencing him to twenty years' imprisonment for murder. Ky. Const. § 110(2)(b). Gribbins alleges that the jury instructions inaccurately presented the law of self-protection and that the combination instruction for intentional and wanton murder resulted in a non-unanimous verdict. Additionally, Gribbins alleges that the trial court erred in denying his motion for directed verdict. Finding no error, we affirm the judgment and sentence of the Marion Circuit Court.

## FACTS AND PROCEDURAL HISTORY

During the evening of November 8, 2012, David Litsey was out with friends visiting the Raywick Bar and Grill. Litsey was accompanied that evening by his cousin, Marcus Gerton, and his friends Marquis Douglas,

Deshawn Douglas, and Joseph Moore. At the end of the evening, the group rendezvoused at their vehicle, but Moore was not present. Subsequently, Marquis Douglas walked back to the bar to look for Moore, and Litsey drove their vehicle to the entrance to the bar where a crowd had gathered.

Litsey exited his vehicle and entered the crowd to look for Moore. However, the mood of the crowd was hostile, with multiple fights taking place. While still in the crowd, Litsey was shot and, despite quick transport to the hospital by his friends, died shortly thereafter. After the shooting, police arrived at the bar to secure the crime scene and begin an investigation. Early in their investigation, Christopher Gribbins, the owner of the Raywick Bar and Grill, emerged as a suspect. When interviewed after the shooting, Gribbins initially lied to investigators claiming that he did not know anything about Litsey's death.

On November 19, 2012, Gribbins was indicted for Litsey's murder under both the intentional and wanton provisions of Kentucky Revised Statute (KRS) 507.020. During the resulting trial, the jury heard testimony from a number of eyewitnesses to the shooting. Gerton testified that while Litsey was trying to stop the fighting in the crowd he was pushed into Gribbins. Gribbins then attempted to pistol whip Litsey and the gun went off. Another witness, Katie Edelen, testified that after the two men had a brief exchange Gribbins began pistol whipping Litsey. During that assault, the gun discharged killing Litsey.

Gribbins's assault on Litsey prior to the shooting was also supported by the testimony of Sabrina Newton. Newton witnessed Gribbins repeatedly strike

2

Litsey in the shoulder with the pistol, prior to the gun's discharge. Another witness, Jonathan Colvin, recalled that Litsey and Gribbins had initially faced off from each other, with both men exhibiting a confrontational stance. Colvin recalled that Gribbins was whipping Litsey with the handgun when the gun discharged

The jury also heard from William Cochran, who testified that he heard Gribbins say "they're surrounding me." In response, Gribbins pointed his handgun in Litsey's direction and it discharged. Similarly, Nicholas Keeling testified that he overheard Gribbins admit to intentionally shooting Litsey. Marquis Douglas also testified as to the intentional nature of the shooting, recalling that he watched a man walk towards Litsey, brandish a gun, and shoot him.

In his defense, Gribbins testified as to his version of that evening's events. Gribbins alleged that after being confronted outside the bar in an aggressive manner by Litsey he drew his handgun to protect himself. Additionally, Gribbins admitted that while the handgun was in his right hand, he had placed his right hand on Litsey's chest. While the handgun was aimed at Litsey it discharged, killing him.

After weighing all the testimony and physical evidence, the jury found Gribbins guilty of wanton murder. The jury recommended a penalty of twenty years' imprisonment which was adopted by the trial court in its final judgment.

3

## ANALYSIS

### I. The Trial Court Properly Instructed the Jury

Gribbins argues that the trial court erred by failing to accurately instruct the jury on self-protection. In particular, he alleges that the trial court's instructions permitted the jury to return a murder conviction, prior to considering whether to convict him of a lesser included offense due to imperfect self-defense. However, the trial court's instructions were proper as they were in accord with prior decisions of this Court.

It is well established that the trial court is required to instruct the jury on the "whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999) (citing Kentucky Rule of Criminal Procedure (RCr) 9.54(1); *Kelly v. Commonwealth*, 267 S.W.2d 536, 539 (Ky. 1954)). Additionally, the trial court is required to "instruct the jury on all lesser-included offenses which are supported by the evidence." *Yarnell v. Commonwealth*, 833 S.W.2d 834, 837 (Ky. 1992) (citing *Cannon v. Commonwealth*, 777 S.W.2d 591 (1989)); *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky. 1986). While we evaluate the trial court's decision to instruct on a specific claim for an abuse of discretion, the substantive content of the jury instructions will be reviewed *de novo*. *Sargent v. Schaffer*, 467 S.W.3d 198, 204 (Ky. 2015).

4

Gribbins begins by arguing that the trial court's instructions failed to accurately address the elements of self-protection as required under KRS 503.120 and our prior decisions in *Elliott v. Commonwealth*, 976 S.W.2d 416 (Ky. 1998) and *Commonwealth v. Hager*, 41 S.W.3d 828 (Ky. 2001).

In *Elliott*, this Court departed from a line of authority that had precluded the assertion of a self-protection defense to the charges of wanton murder, second-degree manslaughter, and reckless homicide. 976 S.W.2d at 422. The *Elliott* Court determined that when there is evidence to support self-protection as a defense to an offense whose culpable mental state is wanton or reckless, the trial court is required to instruct the jury on self-protection. *Id.* However, *Elliott* stressed that the subjective belief of a defendant in his assertion of self-protection is not absolute. *Id.* at 419. Rather, *Elliott* recognized that the application of imperfect self-defense was circumscribed and qualified by KRS 503.120. *Id.*

Under KRS 503.120, a defendant cannot shield himself from prosecution if he was unreasonable in his belief or if an innocent third party was harmed. *Id.* at 419-420. However, if a defendant was wanton or reckless in his belief that force was necessary for self-defense, he would be entitled to an instruction on a lesser-included offense under a theory of imperfect self-defense. *Id.* at 420. Accordingly, "[i]f the charged offense is intentional murder or first-degree manslaughter, a wantonly held belief in the need for self-protection reduces the offense to second-degree manslaughter and a recklessly held belief reduces the offense to reckless homicide." *Id.* n.3.

5

This Court further clarified the law concerning imperfect self-protection in *Hager*. In *Hager*, Justice Cooper, writing for the Court, addressed how the application of KRS 503.120 affected the defense of self-protection when asserted to an offense with a wanton or reckless mental state. 41 S.W.3d at 842. Additionally, *Hager* provided specimen recommended instructions for imperfect self-protection under the various degrees of homicide. *Id.* at 844-847.

In the case at bar, the trial court's instructions are nearly identical to the exemplars contained in William S. Cooper and Donald P. Cetrulo's, *Kentucky Instructions to Juries, Criminal* § 11.07 (5th ed. 2007) [hereinafter Cooper's *Instructions*].[1] While Cooper's *Instructions* are not binding on this Court, we have previously noted their persuasive value. *Gonclaves v. Commonwealth*, 404 S.W. 3d 180, 193 n.5 (Ky. 2013), *as corrected* (Mar. 14, 2013). Gribbins acknowledges the persuasive value of Cooper's *Instructions*, but he mistakenly concludes that the imperfect self-protection instruction contained in the fifth edition of Cooper's *Instructions* does not substantially comport with our decision in *Hager*. In fact, the trial court's instructions, and the exemplars from Cooper's *Instructions* on which they were modeled, have only two minor

---

[1] There are minor differences between the trial court's instructions and the exemplars from Cooper's *Instructions*. In particular, the trial court properly omitted portions of Cooper's *Instructions*, where the facts of the case did not support giving a portion of an instruction (*e.g.*, no language was included in trial court's instructions concerning extreme emotional disturbance). Additionally, the trial court's instructions include the instructions for intentional and wanton murder under a single instruction titled "intentional murder." This differs from Cooper's *Instructions*, which properly titles the instruction "murder." While the trial court's instruction should have been titled "murder" (as the instruction addressed both intentional and wanton murder) the title of instruction did not cause reversible error, nor is it raised as such by Gribbins.

6

organizational and stylistic differences from the example promulgated by *Hager.*

The first organizational difference between the trial court's instructions and the example from *Hager* concerns the placement of the self-protection instruction. The trial court's instructions address self-protection before moving on to the various degrees of homicide; whereas the instructions outlined in *Hager* do not address the law regarding self-protection until after all of the substantive offenses are outlined. 41 S.W.3d at 847. The trial court's placement of the self-protection instruction earlier in the trial court's instructions was appropriate and inured to Gribbins's benefit because it introduced the jury to the legal concept of self-protection before addressing the various degrees of homicide.

As *Hager* explained, where sufficient evidence has been presented by a defendant to justify an instruction on self-protection, the Commonwealth is required to disprove that defense beyond a reasonable doubt, and its absence becomes an element of the offense. *Id.* at 833, n.1 (citations omitted). Because the law of self-protection was presented early on in the instructions, the jury was aware of the self-protection defense before they were informed of the elements of each of the substantive homicide offenses. Thus, as the jury encountered the murder, manslaughter, and reckless homicide instructions (Instructions 4-7), the last element of each, *i.e.,* "he was not privileged to act in self-protection," already had meaning because self-protection as recognized in Kentucky was explained in Instruction No. 3 immediately after the initial

7

instructions regarding the presumption of innocence and definitions. The placement of the self-protection instruction earlier in the trial court's instructions did not run afoul of our decision in *Hager* and, in fact, provided the jury with a more logical approach to this often-complicated area of the law.

The second organizational difference concerns how the trial court's instructions and the example from *Hager* differ in presenting the law of imperfect self-protection. The example from *Hager* includes all information concerning self-protection and imperfect self-protection together in one freestanding instruction. That instruction explains how a defendant's wanton or reckless exercise of self-protection would affect each previously discussed substantive offense. In contrast, the trial court's instructions, mirroring those found in Cooper's *Instructions*, address the impact of imperfect self-protection within each section of the instructions where it applies, *i.e.*, second-degree manslaughter and reckless homicide.

As noted, in each of the trial court's instructions for the various degrees of homicide, the jury was required to find that Gribbins was not privileged to act in self-protection. Additionally, in the instructions for second-degree manslaughter and reckless homicide the jury was provided with the law of imperfect self-protection because if the jury believed Gribbins had a wanton or reckless belief in the need for self-protection or the degree of force needed those two offenses were the ones pertinent to their verdict. By including this imperfect self-protection language within the relevant substantive offenses, the trial court made evident to the jury what the proper result should be, if the jury

were to conclude that Gribbins's exercise of self-protection was reckless or wanton.

Contrary to Gribbins's assertions, the trial court's instructions and the exemplars from Cooper's *Instructions* on which they were modeled are in accord with *Hager.* The trial court's instructions permitted the jury to fully consider theories of self-protection and imperfect self-protection in determining whether he was guilty and the appropriate degree of homicide. Gribbins's argument that the jury could have found him guilty of murder prior to considering imperfect self-protection simply has no merit. Jury instructions are not considered in a vacuum, rather "instructions must be considered as a whole, taking into account the evidence and closing argument of counsel." *Epperson v. Commonwealth,* 197 S.W.3d 46, 60 (Ky. 2006). Through the trial court's jury instructions, which were read to the jury in their entirety, and the arguments of counsel during closing argument, the jury was fully informed of the law of the case and the different verdicts that they could return before they even left the courtroom to deliberate. There was no error.

## II. The Combination Murder Instruction Did Not Violate Gribbins's Right to a Unanimous Verdict

Gribbins next argues that the trial court erred by giving the jury a combination instruction which permitted Gribbins to be convicted of either intentional or wanton murder. While most appellants attack the absence of proof supporting one of the two theories, Gribbins alleges that there was insufficient evidence to support the jury being instructed on either intentional

9

or wanton murder.[2] This is essentially a directed verdict argument but because he raises a unanimous verdict claim we will address the relevant law.

Gribbins was entitled to a unanimous jury verdict under Section 7 of the Kentucky Constitution. *Hayes v. Commonwealth*, 625 S.W.2d 583, 584 (Ky. 1981); *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978). The right to a unanimous verdict is not violated by a combination instruction so long as there is sufficient evidence to convict under both theories of culpability and the jurors are satisfied beyond a reasonable doubt that the defendant is guilty under one of the theories. *Travis v. Commonwealth*, 327 S.W.3d 456, 459-60 (Ky. 2010).

The combination instruction was proper as there was sufficient evidence presented during the trial to warrant an instruction for both intentional and wanton murder. The intentional murder instruction was supported by the testimony of three witnesses. The first witness, Marquis Douglas, testified that he witnessed a man, later identified as Gribbins, walk towards Litsey, brandish a gun, and shoot him. The second witness, Gerton, also testified about the intentional nature of the shooting. Gerton recalled that Gribbins initially tried to strike Litsey with the gun, but failed to make contact. Gribbins then pointed the gun at Litsey and it went off. The third witness, Keeling, testified that he

---

[2] Gribbins also alleges that the trial court failed to make the findings required by *Benjamin v. Commonwealth*, 266 S.W.3d 775 (Ky. 2008). In *Benjamin*, the Court expressed that a trial court should make a preliminary determination as whether there is sufficient evidence to support a combination instruction. *Id.* at 785. In the case at bar, the trial court complied with *Benjamin*, by evaluating the evidence and correctly determining that a combination instruction was proper.

10

did not see the shooting, but heard Gribbins admit to shooting Litsey in response to Litsey's warning to Gribbins to not get involved in the melee. Based on the testimony of these witnesses, an instruction for intentional murder was warranted.

Similarly, there was sufficient evidence presented at trial to justify the wanton murder instruction. As Gribbins readily acknowledges, multiple witnesses testified to Gribbins's pistol whipping of Litsey. In using a loaded handgun, as a club to beat Listey, Gribbins consciously disregarded a substantial and unjustifiable risk that the handgun might accidentally be discharged and his conduct plainly created a grave risk of death to Litsey under circumstances manifesting an extreme indifference to human life. Based on the evidence, a rational juror could have concluded that Gribbins intentionally killed Litsey or assaulted him with disregard of the grave risk posed to his life. Therefore, the trial court's use of a combination murder instruction was proper, and it did not violate Gribbins's right to a unanimous verdict.[3]

---

[3] Gribbins also alleges that the jury was confused by the combination instruction which violated his right to a unanimous verdict. During deliberations the jury asked whether wanton murder was addressed under the intentional murder instruction or whether it was covered under its own instruction. The trial court, after speaking with counsel, instructed the jury to refer to the instructions that they had been given. The jury returned to its deliberations and after reviewing the court's instructions specifically concluded that Gribbins was guilty of wanton murder, writing that finding on the verdict form. There was no error.

11

## III. The Trial Court Properly Denied Isaac's Motion for a Directed Verdict of Acquittal.

In his final argument, Gribbins alleges that the trial court erred in denying his motion for directed verdict. Specifically, Gribbins argues that there was insufficient evidence to support a guilty verdict for intentional or wanton murder.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a conviction be supported by proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S. Ct. 2781 (1979). "The question on appeal is whether, after viewing the evidence in the light most favorable to the Commonwealth, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009) (citing *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991)). Questions pertaining to "the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide." *Young v. Commonwealth*, 50 S.W.3d 148, 165 (Ky. 2001) (citing *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999)).

As noted, Gribbins's claims concerning the impropriety of the combination jury instruction mirror his argument that his motion for directed verdict was improperly denied. Gribbins alleges that Litsey's death was the result of a "physical confrontation," and that he lacked the requisite mental state to be convicted of either intentional or wanton murder. This is erroneous

as there was more than sufficient evidence presented to support the denial of the motion for directed verdict.

First, as to the wanton murder instruction, there was sufficient evidence for the jury to believe that Gribbins consciously disregarded a substantial and unjustifiable risk which resulted in Litsey's death. Multiple witnesses testified to seeing Gribbins pistol whip Litsey. Gribbins's use of a loaded weapon to batter Litsey was done in disregard of the grave risk that the gun might accidentally discharge during his assault. The trial court properly denied the motion for directed verdict as to the offense of wanton murder.

Similarly, there was sufficient evidence for the jury to believe that Gribbins intentionally caused Litsey's death. There were two eyewitnesses to the murder, who testified as to the intentional nature of the shooting. Marquis Douglas, recalled that he witnessed an unknown man walk towards Litsey, brandish a handgun, and shoot him. Likewise, Gerton testified that after Gribbins tried to pistol whip Litsey with the handgun, Gribbins pointed the gun at Litsey and it went off. These accounts were supported by the testimony of Keeling, who overheard Gribbins's admission that he had intentionally shot Litsey. Thus, the trial court also properly denied the motion for directed verdict as to the offense of intentional murder.

## CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of the Marion Circuit Court.

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

James I. Lowry
George Scott Hayworth


COUNSEL FOR APPELLEE:

Andy Beshear, Attorney General of Kentucky

Jason Bradley Moore
Assistant Attorney General