# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 18, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

DATE 5/9/19 Kim Redmon, DC

2018-SC-000250-MR

ANTONIO CORDERIERO DOUGLAS                                   APPELLANT

ON APPEAL FROM DAVIESS CIRCUIT COURT
V.               HONORABLE JOSEPH W. CASTLEN III, JUDGE
NO. 17-CR-00228

COMMONWEALTH OF KENTUCKY                                      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Daviess Circuit Court jury convicted Appellant, Antonio Corderiero Douglas, of one count first-degree assault after he shot and injured Victoria McFarland. The jury also convicted Douglas of being a first-degree persistent felony offender (PFO). The jury recommended a total sentence of twenty years' imprisonment. The trial court accepted the jury's recommendation and sentenced him accordingly. Douglas now appeals, arguing two points of error: (1) that he was unduly prejudiced by the trial court informing several potential jurors that Douglas was in custody just prior to the trial; and (2) the trial court erred in denying Douglas' motions for a directed verdict, judgment of acquittal,

and a new trial, thereby denying him a unanimous verdict. After careful review, we affirm the judgment and sentence.

## I. BACKGROUND

On January 21, 2017, McFarland drove to Douglas' home in Daviess County, Kentucky, to "hang out" and have sex. They had known each other for much of their lives and had a history of intimacy with each other. Prior to her arrival, McFarland consumed two beers and also smoked marijuana. While at Douglas' house, Douglas told McFarland that he was scared and felt like someone was after him. Douglas then left the room and returned with a pistol. McFarland told him that he did not need the gun and that it was "not going to do anything for [him]." The two began kissing.

Sometime thereafter, McFarland noticed Douglas' pistol on the floor, picked it up, and placed it in a nearby potted plant located in the corner of the living room. After a period of additional kissing, McFarland decided that she wanted to leave. Douglas protested and asked her where his gun was. He then stated that she was not allowed to leave until he found his gun. McFarland informed him that the gun was in the plant. After she turned and attempted to leave, Douglas grabbed her shirt, sat her down on a chair, pointed the gun at her head and shot her. The bullet passed through McFarland's right arm and pelvic area, with an exit wound on her buttock.

Douglas declined McFarland's cry for help. Instead, he laughed and said that she "took that like a soldier." He then picked her up, exited the house, and placed her in the driver's seat of her car. McFarland successfully drove

2

home but then fell on the ground after exiting her vehicle. Seeing her neighbor nearby, she yelled "he shot me over a piece of ass!"

McFarland was hospitalized for two or three days during which she underwent two surgeries. Her arm required a metal plate and screws. In addition to other injuries, her strength and mobility had been diminished, specifically in her fingers. She disclosed to an investigating detective that although she thought the shooting was intentional, it could have been an "accident." This disclosure was reiterated during her subsequent trial testimony.

## II. ANALYSIS

### A. THERE WAS NO PREJUDICE IN POTENTIAL JURORS HEARING THAT DOUGLAS WAS IN CUSTODY.

Prior to trial, defense counsel informed the court that ten potential jurors overheard a court employee named Ms. Jackson[1] say that Douglas was in custody and was going to be tried. The details of this event are unclear. For example, the ten potential jurors were not individually identified. The only portion of the record cited by the parties here is an in-chambers conference with the trial judge, counsel, and Douglas. Therein, defense counsel moved for a continuance to select a new jury pool.

It appears that the potential jurors were present during motion hour when they may or may not have overheard Ms. Jackson's statement. However, the court clarified that Douglas was not specifically named. Rather, Ms.

---

[1] The record fails to clarify in what capacity Ms. Jackson serves.

Jackson stated that "someone" was in custody and was going to be tried. Defense counsel believed that this was an impermissible comment that, when taken in context, was referring to Douglas.

The court denied the motion and explained on the record that he had admonished the potential jurors not to consider anything they might have heard about the upcoming trial. During voir dire, the court and defense counsel asked the potential jurors whether they had formed an opinion of Douglas' guilt. None responded that they had. The trial commenced, and there is no indication that any jurors were removed or replaced because of this issue.

Douglas styles this issue as an evidentiary violation and argues that reversal of his conviction is required. A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005). Abuse of discretion occurs if "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In support of his argument, Douglas cites KRE 403 and RCr 8.28(5). The former provision is the well-known rule excluding unduly prejudicial evidence. RCr 8.28(5) provides:

> During his or her appearance in court before a jury the defendant shall not be required to wear the distinctive clothing of a prisoner. Except for good cause shown the judge shall not permit the defendant to be seen by the jury in shackles or other devices for physical restraint.

4

First, Douglas failed to invoke these specific provisions in support of his argument before the trial court. In any event, this argument is misplaced. The issue here does not fall squarely within the purview of either KRE 403 or RCr 8.28(5). The contested statement at issue occurred prior to trial and prior to selecting the jury. At no time did the jurors see Douglas in prisoner's clothing or restraints. We have previously addressed a similar issue in *Shegog v. Commonwealth*, 142 S.W.3d 101 (Ky. 2004).

In that case, several potential jurors allegedly viewed the defendant as he was being escorted by law enforcement from the jail into the courthouse. The defendant was wearing street clothes and handcuffs. In affirming the trial court's denial of the defendant's motion for a continuance, this Court reasoned:

> The decision whether or not to grant a continuance lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. We have repeatedly held that the inadvertent viewing of the defendant in handcuffs for the sole purpose of being taken to or from the courtroom is not automatically reversible error.

*Id.* at 109

We have also observed that "it would be impossible as a practical matter to conduct a trial without the jury seeing some sign that the defendants are not entirely free to come and go as they please." *Douglas v. Commonwealth*, 586 S.W.2d 16, 18 (Ky. 1979) (*overruled on other grounds in Ross v. Commonwealth*, 710 S.W.2d 229 (Ky. 1986)). Similarly, it is impossible for the jurors not to intuit that the defendant's freedom has been somewhat curtailed simply by being subjected to the criminal justice process. This includes the intuition that

5

the defendant either is or was in police custody. Moreover, the trial court in the present case admonished the jury to only consider the evidence presented at trial. Therefore, even if we were to agree that this is an evidentiary issue, it is well-established that an admonition is usually sufficient to cure an erroneous admission of evidence. *Lang v. Commonwealth*, 556 S.W.3d 584, 594 (Ky. 2018) (quotation omitted). And critically, Douglas has failed to demonstrate that any prejudice occurred. As such, the trial court did not abuse its discretion in denying Douglas' motion for a continuance.

## B. DENIAL OF DIRECTED VERDICT AND POST-TRIAL MOTIONS WAS PROPER.

Douglas further argues that the court erred in denying his motions for a directed verdict, judgment of acquittal, and a new trial, thereby denying him a unanimous verdict. Our directed verdict standard has been firmly established in *Commonwealth v. Benham*:

> On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

> 816 S.W.2d 186, 187 (Ky. 1991).

6

To prove first-degree assault under KRS[2] 508.010(1), the Commonwealth must demonstrate that the defendant:

(a) [I]ntentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

Douglas did not testify. Most of the evidence incriminating him came from McFarland's trial testimony. As previously noted, she described the events surrounding her injuries with detail and clarity. Critically, McFarland testified that Douglas pointed the gun at her head and then fired. We have previously held that "pointing a gun, whether loaded or unloaded, is conduct sufficient to support an instruction of wanton endangerment." *Gilbert v. Commonwealth*, 838 S.W.2d 376, 381 (Ky. 1991) (citing *Thomas v. Commonwealth*, 567 S.W.2d 299 (Ky. 1978)). It logically follows that pointing a gun at the victim's head and then firing is not only wanton with extreme indifference to human life which creates a grave risk of death, it is also evidence of intent. *Gribbins v. Commonwealth*, 483 S.W.3d 370, 377-78 (Ky. 2016).

Therefore, we cannot conclude that it was clearly unreasonable for the jury to convict Douglas of first-degree assault. Douglas' additional arguments that the court erred by denying his motion for a judgment of acquittal and a new trial require the same standard of review and are

_____

[2] Kentucky Revised Statutes

7

premised on the same facts. As such, we affirm the trial court's denial of those motions as well.

### *Unanimity*

Douglas' argument that he was denied a unanimous verdict is not well-developed. His general claim is that the jury was erroneously instructed under both theories articulated in KRS 508.010(1)—intentional and wanton. Like in *Gribbins*, "[t]his is essentially a directed verdict argument . . . ." *Id.* at 376. Therein, we further determined that "[t]he right to a unanimous verdict is not violated by a combination instruction so long as there is sufficient evidence to convict under both theories of culpability and the jurors are satisfied beyond a reasonable doubt that the defendant is guilty under one of the theories." *Id.* (citing *Travis v. Commonwealth*, 327 S.W.3d 456, 459–60 (Ky. 2010)). As previously discussed, there was sufficient evidence to convict under both theories. Therefore, there was no unanimity violation.

## III. CONCLUSION

For the foregoing reasons, the judgment and sentence of the Daviess Circuit Court is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., concur. Buckingham, J., not sitting.

8

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General

Christopher Henry
Assistant Attorney General