RENDERED: NOVEMBER 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1062-MR

DEANDRE FORD                                                          APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE LUCY A. VANMETER, JUDGE
ACTION NO. 19-CR-00174-001

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

DIXON, JUDGE: Deandre Lamont Ford appeals from the order of the Fayette

Circuit Court, entered on May 31, 2019, denying his motion to dismiss the charge

of assault in the first degree as immune from prosecution under KRS[1] 503.085.

Following a careful review of the record, the briefs, and the law, we affirm.

---

[1] Kentucky Revised Statutes.

## FACTS AND PROCEDURAL BACKGROUND

The underlying facts of this case concern two men—Deandre Lamont Ford and Justin Ingguls[2] – who were once friends. Their friendship ended because of their overlapping relationships with McKenzie[3] Lewis. Ingguls dated Lewis first. He was abusive toward Lewis, causing her to seek and obtain a domestic violence order against him. Ingguls was very unhappy when the relationship ended and began calling and texting Lewis multiple times a day threatening to find and kill her. Consequently, Lewis moved from Frankfort, Kentucky, to Lexington, Kentucky, to distance herself from Ingguls, without informing him of the move. Even so, the phone calls and texts persisted.

A few months after the breakup, Lewis began dating Ford, who eventually moved in with Lewis. When Ingguls found out Ford and Lewis were dating, he began making similar calls and texts to Ford.

On September 7, 2018, Ford and Lewis visited a drive-thru window at a tobacco store in Frankfort. Ingguls was inside the store. When he saw the two, Ingguls exited the store and approached their vehicle, making threats to Ford and Lewis. Ford and Lewis drove off, and Ingguls threw a drink he had been holding

---

[2] At times in the record, below, Ingguls's last name is spelled "Inguls." We choose to use the spelling "Ingguls" because this appears to be the most prevalent in the record, below.

[3] At times in the record, below, Lewis's first name is spelled "McKenzi." We choose to use the spelling "McKenzie" because this appears to be the most prevalent in the record, below.

at the vehicle. Ford and Lewis returned to their apartment and fell asleep that evening around 7:00 p.m.

Around midnight that same evening – then September 8, 2018 – Ingguls arrived at Lewis's and Ford's corner apartment. A surveillance camera recorded the view of the door and the area in front of the window but provided no video coverage of the window itself. Due to the lighting, however, shadows were cast portraying Ingguls's activity at the window. Ingguls approached the window, then went to the parking lot to open the doors of Lewis's car. He then returned to the window and knocked on it. Ford exited the apartment with a gun in one hand and his cell phone in the other. He spoke to Ingguls, told him to leave, and returned inside the apartment. Ingguls attempted to follow Ford inside the apartment but the door was locked. Ingguls then approached the window again and may have slid it open. As he stood at the window, Ingguls was struck with a bullet, after which he jumped back and fled the vicinity. Ford and Lewis left the apartment shortly after the shooting.

A warrant for Ford's arrest was issued and executed. Subsequently, Ford was indicted on the following charges: first-degree assault,[4] convicted felon

---

[4] KRS 508.010, a Class B felony.

in possession of a handgun,[5] trafficking in methamphetamine,[6] possession of drug paraphernalia,[7] trafficking in marijuana,[8] and being a persistent felony offender, first-degree.[9]

Ford moved to dismiss the charge of first-degree assault, claiming he was immune pursuant to KRS 503.085. An evidentiary hearing was held at which Ford, Lewis, and Detective Jordan Tyree testified. After the matter was briefed, the court entered its order denying Ford's motion to dismiss. Ford entered a conditional guilty plea to attempted second-degree assault, convicted felon in possession of a handgun, possession of methamphetamine, and being a persistent felony offender in the second-degree, specifically reserving his right to appeal the immunity ruling. A final judgment and sentence was entered, and this appeal followed.

## STANDARD OF REVIEW

The standard of review for immunity claims under KRS 503.085 is whether a substantial basis supports the trial court's findings of fact.

---

[5] KRS 527.040, a Class C felony.

[6] KRS 218A.1412, a Class C felony.

[7] KRS 218A.500(2), a Class A misdemeanor.

[8] KRS 218A.1421(2)(a), a Class A misdemeanor.

[9] KRS 532.080.

-4-

*Commonwealth v. Lemons*, 437 S.W.3d 708, 715 (Ky. 2014). On appellate review, this Court must establish whether the trial court, after using a totality-of-the-circumstances analysis, had a substantial basis for finding probable cause. *Id.* (citation omitted). The prosecution has the burden of proving "there is probable cause to conclude that the force used was not legally justified." *Rodgers v. Commonwealth*, 285 S.W.3d 740, 754 (Ky. 2009). Probable cause has been defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Lemons*, 437 S.W.3d at 715 (internal quotation marks and citation omitted).

KRS 503.085 requires that the Commonwealth establish probable cause of unlawful use of force based upon the then-existing evidence of record. "The burden is on the Commonwealth to establish probable cause and it may do so by directing the court's attention to the evidence of record including witness statements, investigative letters prepared by law enforcement officers, photographs, and other documents of record." *Rodgers*, 285 S.W.3d at 755. There is no corresponding right for the defendant to oppose the Commonwealth's proof of probable cause with his own proof supporting his justification. *Id.* Prosecution must proceed when the Commonwealth meets its probable cause burden. *Id.* at 754-55.

Although we defer to the trial court's findings of fact, choosing the

correct standard to apply is a legal conclusion. The standard of review for conclusions of law is *de novo*. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998) (citing *Ornelas v. United States*, 517 U.S. 690, 697, 116 S. Ct. 1657, 1662, 134 L. Ed. 2d 911 (1996)).

## LEGAL ANALYSIS

On appeal, Ford argues the trial court erred in failing to find him immune from prosecution for first-degree assault under the provisions of KRS 503. Ford addresses many provisions contained in this chapter. For brevity, we need not address his arguments concerning each of these provisions since the outcome is the same.

Unfortunately, the bulk of Ford's arguments focus on the wrong question. While Ford asserts the trial court's determination regarding his motion to dismiss should have focused upon whether he was justified in his actions and/or acted in self-defense,[10] defense of another,[11] or defense of property,[12] the critical question that needed to be – and was – addressed by the trial court was whether the Commonwealth could prove probable cause existed that Ford's use of deadly force was unlawful. Stated another way, the proper standard is whether the trial court,

---

[10] KRS 503.050.

[11] KRS 503.070.

[12] KRS 503.080. This statute permits use of deadly force immediately necessary to prevent burglary, robbery, or other felony involving the use of force.

based on the record before it, had a substantial basis for finding probable cause to believe Ford's use of deadly force was unlawful – not whether Ford's self-defense was justified. Ford's and Lewis's explanations of events may have led a jury to find probable cause for justification. However, because the Commonwealth proved Ford's actions were unlawful under a probable cause standard, Ford is not immune from prosecution.

Probable cause is a relatively low standard based on the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 241, 103 S. Ct. 2317, 2333, 76 L. Ed. 2d 527 (1983). It is not enough for the defendant to insist his actions were justified: a defendant's subjective belief in his "assertion of self-protection is not absolute." *Gribbins v. Commonwealth*, 483 S.W.3d 370, 374 (Ky. 2016) (citation omitted). The prosecution may overcome this low threshold by providing substantial evidence of imperfect self-defense or the existence of conflicting evidence in the record to show potential unlawful conduct.

The unlawful force alleged in the charge for which Ford was indicted and contests is assault in the first degree. KRS 508.010 establishes the elements which must ultimately be proven at trial and defines the applicable probable cause standard. The statutes relating to the unlawful use of force are distinct from the statutes allowing for justification of self-defense.

Self-defense is an affirmative defense described in KRS 503.050(1), which allows for justification "when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person." The statute also establishes deadly physical force is justifiable only when the defendant believes he is in danger of death or serious physical injury. KRS 503.050(2). Although there is no duty to retreat before using deadly force pursuant to KRS 503.050(4), there are limitations on justification, *e.g.*, when the defendant resists arrest, provokes the use of physical force, or initiates the aggression as set forth in KRS 503.060. Immunity from prosecution is provided when the explicit conditions described in KRS 503.085 are clearly met.

Even if a defendant acts in self-defense, under KRS 503.120, immunity is unavailable when he is wanton or reckless in believing his use of force is justified, or when he injures or creates a risk of injury to innocent people. A defendant may not avoid liability and may be convicted of a crime:

> (1) When the defendant believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary . . . the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.

(2) When the defendant is justified under KRS 503.050 to 503.110 in using force upon or toward the person of another, but he wantonly or recklessly injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for an offense involving wantonness or recklessness toward innocent persons.

*Id.* This statute qualifies justification in cases of imperfect self-defense when the defendant's use of force harms an innocent third party or when the defendant is unreasonable in believing he was justified in the level of force used to defend himself. *Id.*

The Supreme Court of Kentucky has recognized "conflicting evidence as to whether [the] use of deadly force was justified" supports the preclusion of a pretrial finding of immunity. *Rodgers*, 285 S.W.3d at 754. The evidence in the record upon entry of the order denying Ford's motion to dismiss was, at best, inconsistent and ambiguous. Even assuming that Ford's interpretation of the video and version of the events are truthful, he could not be justified for purposes of self-defense immunity in any wanton or reckless actions. KRS 503.120.

Video of the altercation appears to show Ingguls standing outside the residence at or near the bedroom window. The video is unclear as to whether Ingguls was touching the window or trying to enter through it. Witness statements about that night, even some of Ford's own statements, differ from Ford's version presented to our panel in his brief. According to some of Ford's prior statements,

he did not shoot Ingguls but, rather, threw a frying pan at him, or only shot at the ground. Further, Ford never testified that he saw Ingguls with a weapon that night. It is unlikely that shooting a person who only talks to, yells at, or verbally threatens the shooter could be justified as self-defense. There is also substantial evidence that Ingguls did not physically attack Ford or enter the residence; yet, he is the one with the gunshot wound. The court properly considered the effect of this conflicting evidence in providing probable cause as to whether Ford's use of deadly force was unlawful.

Although the trial court did not refer to this statute by name, it is clear it analyzed imperfect self-defense as defined in KRS 503.120. The court found that Ford's use of force was unreasonable and unjustified, particularly when it found that Ingguls did not appear to be armed or entering the residence at the time he was shot. The court decided probable cause existed that Ford's use of deadly force was unlawful. It further determined Ford's belief concerning the need for deadly force was unreasonable. Therefore, although the video footage, testimony, and evidence in the record may have provided probable cause of justification had this matter proceeded to trial, the court did not erroneously deny Ford's motion to dismiss the assault charge based on its determination there was probable cause Ford's use of deadly force was unlawful.

In summation, the ultimate question presented to the trial court was not whether there was probable cause to show Ford was justified and, therefore, whether a defense of self-protection was reasonable, but rather, whether there was probable cause to believe Ford acted unlawfully and, consequently, was not entitled to a complete defense to avoid prosecution at that stage in the proceeding. A defendant may avoid prosecution entirely only when there is no substantial evidence to prove the defendant acted unlawfully. It is possible to establish probable cause of unlawfulness despite the fact evidence justifying self-defense exists. However, after such probable cause is shown, the prosecution must proceed, and the fact-finder must weigh the evidence of self-defense to decide whether it is a complete defense, an imperfect defense, or not justified.

## CONCLUSION

Therefore, the order and judgment entered by the Fayette Circuit Court are AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:  BRIEF FOR APPELLEE:

Julia K. Pearson     Daniel Cameron
Frankfort, Kentucky    Attorney General of Kentucky

           Thomas A. Van de Rostyne
           Assistant Attorney General
           Frankfort, Kentucky