# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: SEPTEMBER 22, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0256-MR

LARRY STEVENS HERALD II                           APPELLANT


V.                ON APPEAL FROM BOONE CIRCUIT COURT
HONORABLE JAMES R. SCHRAND, JUDGE
NO. 19-CR-00645


COMMONWEALTH OF KENTUCKY              APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING IN PART AND REVERSING IN PART</u>**

Larry Stevens Herald II (Herald) was convicted of murder and sentenced to life in prison. He now appeals as a matter of right.[1] Herald raises three issues on appeal. He argues that the trial court erred by failing to grant a directed verdict. Herald also claims the trial court committed reversible error by failing to grant a missing evidence instruction and abused its discretion when it imposed court costs. We hereby affirm the conviction but reverse the imposition of costs.

---

[1] Ky. Const. § 110(2)(b).

## I.    FACTS AND PROCEDURAL BACKGROUND

Herald and Jennifer Cummins (Cummins) lived together as a couple. They hosted a party on June 29, 2019. Herald invited his friend Rodney Holbrook who brought along his brother Michael Holbrook (Michael). Michael made some lewd comments about Cummins and her adult daughter Brandi Taylor. Herald grew increasingly angry about it. While the party was winding down, everyone was congregating in the garage. Herald told Michael to leave the party several times, but Michael did not. The last time Michael refused to leave Herald went to retrieve a handgun from his closet, pulled the slide back and chambered a round and said, "this f*****g guy's gonna leave tonight." Michael was seated among other partygoers when Herald again entered the garage. Herald fired a "warning" shot towards Michael and took a few more steps towards him and struck him with the gun. The handgun discharged when Herald struck Michael with the gun. The bullet entered Michael's left chin and exited his back. Had Michael lived, he would have been a quadriplegic, but this injury proved fatal, when he eventually died twenty-five days later.

When the Boone County Sheriff's Department arrived and investigated the shooting, Michael was still sitting in his chair bleeding heavily. The chairs nearby were moved in the process of rendering first-aid. Michael was taken to a hospital and the officers began processing the crime scene. Detective Faulkner took photos of a chair and ottoman because they appeared to contain

2

bullet defects[2] and he testified to such at the trial. However, he did not take physical possession of them nor conduct any scientific testing to confirm his beliefs. Thus, the chair and ottoman were unavailable for Herald's defense team to examine and confirm if the purported defects contained the presence of lead.

Herald was indicted for murder and the case was tried in front of a jury. He was found guilty of wanton murder and the jury recommended a sentence of life imprisonment. The trial court accepted the recommendation and sentenced Herald accordingly and imposed court costs. Herald filed this appeal as a matter of right, we now address the merits of the appeal.

## II.    ANALYSIS

Herald claims the trial court erred by failing to grant his motion for a directed verdict and for refusing to issue a missing evidence instruction. Herald also contends that the trial court erred when it imposed court costs.

### A. The trial court properly denied Herald's motion for a directed verdict on the murder charge.

At trial, Herald moved for a directed verdict on the charge of murder, and thus properly preserved this issue for appeal. His motion was overruled by the trial judge. He argued, then as now, there was insufficient evidence that he acted under circumstances manifesting extreme indifference to human life. This Court has previously stated that:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the

---

[2] "Bullet defects" is the term crime scene investigators use for what are more commonly known as "bullet holes."

3

Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991). The standard of review for an appellate court on reviewing a lower court's decision regarding a directed verdict is, "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is a defendant entitled to a directed verdict of acquittal." *Id.*

Herald was convicted of wanton murder. KRS 507.020(1)(b) states as follows:

A person is guilty of murder when . . . under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.

By Herald's own admission, he struck Michael in the face with a loaded and cocked firearm. Herald urges this Court to declare as a matter of law that intentionally striking someone in the face with a loaded firearm which then discharges and kills a person, is not wanton murder. We decline to do so. In fact, this Court has upheld a conviction in a similar circumstance where a firearm discharged in the course of a "pistol-whipping." *Gribbins v. Commonwealth,* 483 S.W.3d 370, 376-77 (Ky. 2016).

Herald grabbed a firearm, made sure it was loaded and ready to fire and went to confront and evict an uninvited party guest. Herald discharged a firearm in a garage filled with people and struck Michael in the face with the

4

same weapon he discharged just a few moments earlier. It is certainly plausible that Herald did not intend the predictable result, but that is why he was convicted of wanton murder, not intentional murder. It was not clearly unreasonable for a jury to find that his actions wantonly created a grave risk of death to Michael and that it was those actions that did cause Michael's death. The trial court did not abuse its discretion when it denied Herald's motion.

**B. The trial court properly denied a missing evidence instruction.**

Herald is also seeking reversal of his conviction on the grounds the trial court failed to grant a missing evidence instruction. He properly preserved this issue for appeal by tendering instructions to this effect. Trial courts decide what instructions are proper given the evidence in each case and are vested with broad discretion. *Univ. Med. Ctr., Inc. v. Beglin,* 375 S.W.3d 783, 790 (Ky. 2011). We review the lower court's denial of a missing evidence instruction under the abuse of discretion standard. *Id.*

Herald claims the police failure to preserve the chair with the bullet defects amounted to the destruction of potentially exculpatory evidence. Herald's argument rests on the supposition that had a defense expert been allowed to perform chemical tests on the purported bullet defects in the chair and ottoman it would then prove that Detective Faulkner's testimony was incorrect. This would mean that the holes in the chair and ottoman were not bullet defects and thus make Herald's version of events, that his first shot was fired into the grass, more plausible to a jury.

5

The intentional destruction of exculpatory evidence is a violation of the due process rights of a defendant. *Sanborn v. Commonwealth*, 754 S.W.2d 534 (Ky. 1988). The granting of a missing evidence instruction is one of several remedies available to a trial court when confronted with this due process violation. *Id.* A missing evidence instruction allows a jury to make an inference that if the evidence was not destroyed then it would have been favorable to the defendant. *Id.* This Court has stated that:

> In order for Appellant to be entitled to a missing evidence instruction, he must establish that (1) the failure to preserve the missing evidence was intentional **and** (2) it was apparent to law enforcement that the evidence was potentially exculpatory in nature.

*White v. Commonwealth,* 544 S.W.3d 125, 151 (Ky. 2017) (emphasis added). This Court requires a showing of bad faith on the part of the Commonwealth. *Collins v. Commonwealth,* 951 S.W.2d 569, 573 (Ky. 1997). Bad faith in this case means the Commonwealth intentionally destroyed the chair even though it knew it was potentially exculpatory.

The exculpatory nature of this potential evidence is of dubious value, certainly in this Court's perspective. It is therefore understandable why the exculpatory value of these same tests would elude Detective Faulkner when he conducted the investigation. Multiple eyewitness testified that Herald fired a shot toward a group of people in the garage and narrowly missed them. Chad Lynn testified his wife Mandy was sitting next to Michael when Herald fired the first shot causing her to roll away from the gunfire. Mandy Lynn testified she was seated next to Michael when Herald fired the shot in between them. Herald

6

himself admitted firing the weapon. And yet, which *direction* Herald fired a handgun, and where *the bullet ultimately landed*, at a party in a garage filled with people is less important than the fact that he did fire a handgun at a party in a garage filled with people. Once Herald fired that first shot, he knew that he held a loaded weapon readily capable of firing, and by his own admission struck Michael with it. It was this conduct that was wanton and which ultimately resulted in Michael's death. The trial court did not abuse its discretion when it denied the inclusion of a missing evidence instruction.

## C. The trial court erred when it adjudged Herald to be a poor person under KRS 453.190(2) and yet imposed court costs.

The trial court imposed court costs in its final judgment entered on July 2, 2021. Trial courts are required under KRS 23A.205 to impose court costs on a defendant upon conviction. The exception is as follows:

> Unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future.

KRS 23A.205(2). Here, the trial court issued an order granting Herald's motion to proceed *in forma pauperis* on July 1, 2021. In this order the trial court found Herald to be a "pauper within the meaning of KRS 453.190 and KRS 31.110(2)(b)." Courts look to the latter statute to determine whether someone is "needy" and therefore qualified for the services of the Department of Public Advocacy. KRS 453.190(b), however, defines "poor person:"

> A "poor person" means a person who has an income at or below one hundred percent (100%) on the sliding scale of indigency established by the Supreme Court of Kentucky by rule or is unable to pay the costs and fees of the proceeding in which he is involved

7

without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing.

This Court has previously stated that a trial court's imposition of court costs is illegal if the trial court had previously adjudged the defendant to be "poor." *Spicer v. Commonwealth,* 442 S.W.3d 26, 35 (Ky. 2014). The trial court found Herald to be a "pauper within the meaning of KRS 453.190." Though the trial court appears to conflate "needy" and "poor" in its order granting Herald *in forma pauperis* status, it is clear the trial court adjudged Herald to be "poor" and thus, under *Spicer,* exempt from costs.

## III. CONCLUSION

Based on the foregoing, the trial court did not err when it denied Herald's motion for a directed verdict and likewise did not abuse its discretion when it refused to grant a missing evidence instruction. However, this Court does find the trial court erred when it imposed costs upon Herald despite adjudging him to be a poor person. Therefore, we hereby affirm the conviction and reverse the trial courts imposition of costs.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Bryan Morrow
Assistant Attorney General