**Randy McCLEERY Jr., Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2012–SC–000486–MR.**

Supreme Court of Kentucky.

Sept. 26, 2013.

Steven Jared Buck, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Randy McCleery, Jr., the Appellant, was convicted of first-degree fleeing or evading the police and several other crimes. He challenges his conviction for fleeing or evading, claiming that he was entitled to a directed verdict. He also claims the trial court erred in not allowing the jurors to use their notes during deliberations. Finding no reversible error, his convictions are affirmed.

## I. Background

On the morning of November 28, 2011, Tina Ball went to her son's trailer after a neighbor called and told her that a strange car was parked there. Tina saw a gray Ford Explorer parked in front of the trailer and called her son, Justin, to ask if he knew anyone with a similar vehicle. Justin replied that he did not.

Tina honked the horn of her car a couple of times, and eventually a man wearing a black toboggan walked from behind the trailer. Tina asked who he was, and he replied that he was "Thomas." Tina asked what he was doing, and he replied that he was "looking for guns." The man then got into the passenger seat of the Explorer as Tina called 911. Tina could not see who was sitting in the driver's seat, but she later identified McCleery, both from a photo line-up and at trial, as the man wearing the black toboggan outside the trailer.

The Explorer was driven through the yard onto the street. Breckinridge County Deputy Sheriff Jimmy Gilpin responded to a dispatch request and soon located the vehicle. He activated his lights to make a traffic stop, but the driver did not stop the vehicle. The Explorer traveled at a speed of 45 to 50 miles per hour in a 45–miles–per–hour zone during the pursuit, running three stop signs in the process. It was a rainy morning and traffic was heavy because of the wet roads.

After driving for a mile or two, the Explorer pulled into a residential circular drive and the passenger jumped out of the vehicle and ran. The Explorer resumed driving, still followed by Deputy Gilpin. Soon after, the Explorer stopped, and the driver was arrested and identified as Patrick Darcy. Police searched the vehicle with Darcy's consent and found a shotgun, a rifle, ammunition, and a paint can containing money. (The paint can had been taken from the trailer.) Darcy admitted that he had been at Justin Ball's trailer earlier that day.

Meanwhile, Deputy Sheriff Timothy Henley received a call stating that a man had recently emerged from the woods near the caller's home. The man was soaking wet and wearing a toboggan. The caller

had given the man a ride to a nearby gas station. Deputy Henley went to the gas station and took the man in the toboggan, McCleery, into custody in connection with the burglary investigation.

Darcy and McCleery were both indicted. At trial, the jury found McCleery guilty of first-degree burglary, first-degree fleeing and evading the police, theft by unlawful taking of property under $500, and being a second-degree persistent felony offender. He was sentenced to thirty-five years for the burglary conviction, enhanced by his status as a persistent felony offender, and five years for the fleeing and evading conviction, to be served consecutively for a total of forty years in prison. (The misdemeanor theft sentence was run concurrently.)

McCleery appeals to this Court as a matter of right. *See* Ky. Cons. § 110(2)(b).

## II. Analysis

McCleery raises two issues: (1) whether the trial court erred in denying McCleery's motion for a directed verdict of acquittal on the charge of first-degree fleeing and evading police; and (2) whether the trial court's error in prohibiting the jurors from taking their notes into deliberations resulted in substantial prejudice to McCleery.

**A. The trial court did not err in denying the motion for a directed verdict of acquittal on the charge of first-degree fleeing or evading the police.**

McCleery first claims that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of first-degree fleeing or evading police. He alleges that the Commonwealth did not show that anyone had been killed or seriously physically injured, or that a substantial risk of serious physical injury or death to any person had been created. He also argues that there was no evidence that he was complicit in his co-defendant's action.

In deciding whether to grant a directed verdict, "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth" and "must assume that the evidence for the Commonwealth is true, . . . [while] reserving to the jury questions as to the credibility and weight to be given to such testimony." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). The trial court should not grant a directed verdict "[i]f the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty." *Id.* However, on appeal, some deference is given to the trial court's decision, and a directed verdict of acquittal can only be granted "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Id.*

We will address each of McCleery's arguments in turn.

### 1. The substantial-risk element.

Though there are several ways to commit first-degree fleeing or evading, *see* KRS 520.095, McCleery and his co-defendant were prosecuted under the theory that they "cause[d], or create[d] a substantial risk of, serious physical injury or death to any person or property." KRS 520.095(1)(a)4. McCleery claims there was insufficient proof of this element. The Commonwealth argues that this claim was not preserved because McCleery never stated this basis for his directed-verdict motion at trial, and even though the co-defendant did raise it, McCleery did not join that motion.

The Commonwealth is correct. "A motion for a directed verdict shall state the specific grounds therefor," CR 50.01, and failure to state a specific ground "will foreclose appellate review," *Pate v. Com-*

*monwealth,* 134 S.W.3d 593, 597–98 (Ky. 2004), except to the extent that palpable error is shown, *id.* (citing RCr 10.26). Despite never having stated this specific ground and having failed to join his co-defendant's motion, McCleery urges that his argument should be considered preserved as a matter of judicial efficiency, because the trial court considered and rejected his co-defendant's directed-verdict motion by applying the law to the same set of facts.

This Court, and its predecessor, has repeatedly held that "[t]he objection of an attorney for one co-defendant will not be deemed to be an objection for the other co-defendant unless counsel has made it clear that in making the objection it is made for both defendants." *Brown v. Commonwealth,* 780 S.W.2d 627, 629 (Ky.1989); *see also Price v. Commonwealth,* 474 S.W.2d 348, 350 (Ky.1971) ("[W]here two or more defendants are being tried together, it is incumbent upon each party to timely make the court aware of his objection to any of the proceedings. This may be done on behalf of one of the parties or jointly on behalf of others, but the court must be informed of the position taken by a party or he cannot later complain."). Despite McCleery's argument in favor of judicial efficiency, "[t]he fact that co-defendant's counsel made an objection on the issue of which Appellant seeks review is unavailing." *Rice v. Commonwealth,* 199 S.W.3d 732, 738 (Ky.2006). For that reason, McCleery's argument is not preserved for review and thus can at most be palpable error.

■ McCleery cannot show palpable error here because he has not even shown error. While "[a] substantial risk is a risk that is ample, considerable in degree or extent, and true or real, not imaginary ... [and] not every hypothetical scenario of 'what might have happened' represents a substantial risk," *Bell v. Commonwealth,* 122 S.W.3d 490, 497 (Ky.2003) (citations omitted), there is little question that a substantial risk of death or serious injury was created here.

This Court has held that a "substantial risk" was created by a defendant who drove erratically, swerved to avoid a police blockade, collided with three other vehicles, and finally attempted to escape on foot, all while under the influence of alcohol during his flight from the police. *Crain v. Commonwealth,* 257 S.W.3d 924, 927 (Ky.2008). The Court also found that substantial risk was created by a defendant who drove close to 125 miles-per-hour, ignored traffic lights, weaved through traffic, sped through intersections, and finally caused his vehicle to become airborne after hitting a rail in an attempt to avoid a police blockade. *Lawson v. Commonwealth,* 85 S.W.3d 571, 576 (Ky. 2002).

While McCleery's and his co-defendant's behavior did not rise to those levels, it nonetheless created a jury question sufficient to avoid a directed verdict. During the pursuit in this case, according to the testimony of Deputy Gilpin, the Ford Explorer traveled at or above the speed limit in a 45 miles-per-hour zone, and ran three stop signs. Deputy Gilpin did not describe any trouble arising from the failure to stop at those signs, but he did indicate that there were a school and a shopping center in the area, and that traffic was heavy due to the wet roads.

■ This evidence was sufficient to create a jury question on the element of substantial risk. That the Commonwealth did not identify a particular person who was endangered does not change this result. A defendant fleeing police in a motor vehicle when running stop signs creates risk "to other motorists and police officers in his path, not to mention himself." *Id.*

Therefore, the trial court did not err by denying the motion for a directed verdict on the charge of fleeing or evading police.[1]

### 2. *Complicity liability.*

■ McCleery also argues that the Commonwealth failed to prove that he operated the vehicle during the pursuit or that he had any control over it, and thus could be liable as a principal, or that he was complicit in the vehicle's criminal operation. He also argues that the police did not command him to stop after he jumped out of the car and was on foot, and thus could not have been convicted for his conduct after leaving the vehicle.

Admittedly, there is no evidence that McCleery was driving the car. To be convicted of first-degree fleeing or evading, a defendant has to have been "operating a motor vehicle." KRS 520.095. He therefore could not have been convicted as a principal.[2]

This case instead turns on whether there was sufficient proof to convict McCleery under a complicity theory. KRS 502.020(1)[3] establishes complicity liability as follows:

A person is guilty of an offense committed by another person when, with the intent of promoting or facilitating the commission of the offense, he:

  (a) Solicits, commands or engages in a conspiracy with such other person to commit the offense; or

  (b) Aids, counsels or attempts to aid such person to commit the offense; or

  (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

The Commonwealth presented evidence to establish that McCleery and his co-defendant burglarized and left the victim's trailer together in the Ford Explorer, and that the vehicle did not yield to police commands to stop.

They were acting in concert in burglarizing the trailer, and McCleery voluntarily got into the Explorer to escape the scene. It would not be clearly unreasonable for a jury to infer from these circumstances that McCleery continued to act in concert with his co-defendant, and thus had solicited or conspired with his co-defendant to flee from or evade the police who took up

---

1. The instruction under which McCleery was convicted proffered two theories of criminal liability—actually having caused death or serious physical injury, or having created a substantial risk of death or serious physical injury. This combination instruction was technically error because there was no evidence that death or serious physical injury was caused, making the portion of the instruction related to this theory surplusage that could undermine the requirement of a unanimous verdict. *See Travis v. Commonwealth,* 327 S.W.3d 456, 463 (Ky.2010). Where there is *no* evidence of a theory of liability, however, "there is no reason to think the jury was misled." *Id.* Thus, "there is no unanimity problem" and "the error is simply harmless." *Id.*

2. Again, because there was no proof to support a principal theory of liability, the jury

instruction was technically error. *See Travis,* 327 S.W.3d at 463. But again, "there is no reason to think the jury was misled." *Id.* Thus, "there is no unanimity problem" and "the error is simply harmless." *Id.*

3. KRS 502.020(2) adds complicity liability for "result offenses," i.e., those in which an element of the offense is a prohibited result, such as a homicide or assault. First-degree fleeing or evading is arguably a result offense in part, since one of its elements is causing or creating a substantial risk of death or serious injury. Indeed, when the defendant operates a motor vehicle while fleeing, this element is what differentiates first– and second-degree fleeing or evading. *Compare* KRS 520.095(1)(a)4 *with* KRS 520.100(1)(b). Nevertheless, the analysis under both parts of the complicity statute is the same in this case.

chase, nor would it be clearly unreasonable for the jury to believe that he aided or counseled his co-defendant (such as by telling him how close police were) to commit the offense. McCleery's intent to flee or evade police was further shown by the fact that he did not turn himself in once he was out of the vehicle and instead continued to flee on foot. In light of all the evidence presented, it was not clearly unreasonable for the jury to find that McCleery intended to flee from police and was thus complicit with his co-defendant in fleeing or evading.

McCleery questions generally whether it is even possible to commit fleeing or evading by means of complicity. He argues that because the statute requires the defendant to be operating a motor vehicle and he was never in control of the vehicle, he could not be complicit. However, the very crux of complicity-liability law, which stems from the common law of accomplice liability, is that it makes a person criminally liable for another person's crime. The statute states explicitly that under the conditions listed (the "elements"), the "person is guilty of an offense committed by another person." KRS 502.020(1). That McCleery was not driving is the very reason he was prosecuted as an accomplice, rather than as a principal.

**B. The trial court's prohibiting jurors from taking their notes into the jury room for deliberations was not reversible error.**

McCleery also complains that the trial court violated RCr 9.72 when it did not allow the jurors to take their notes into the jury room during deliberations. The jurors were allowed to use legal pads to take notes during trial. Both before trial and just before reading the jury instructions, the trial judge announced his intention not to allow the jury to use these notes during deliberations, stating that he did not want the jurors arguing over the accuracy of each others' notes. After closing arguments, the jurors proceeded to the jury room without their notes.

Criminal Rule 9.72 clearly states that jurors shall be allowed to take their notes into the jury room for deliberation.

> Upon retiring for deliberation the jury may take all papers and other things received as evidence in the case. *The jurors shall be permitted to take into the jury room during their deliberations any notes they may have made during the course of the trial,* but upon request of either party the jury shall be admonished that the notes made by jurors shall not be given any more weight in deliberation than the memory of other jurors.

(Emphasis added.) This Court has held that RCr 9.72 is mandatory. *See Barnett v. Commonwealth,* 317 S.W.3d 49, 55 (Ky. 2010). Thus, there is no question that the trial judge erred.

But McCleery never objected to this practice. Nevertheless, he claims he is entitled to reversal because this was a "structural error" or, alternatively, palpable error.

Structural errors are defects affecting the entire framework of the trial and necessarily render the trial fundamentally unfair. *Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Such errors preclude application of the harmless error rule and warrant automatic reversal under that standard. *Id.*

Though the U.S. Supreme Court has not expressly held that structural errors require reversal when not preserved (and thus "plain error review" applies), it has strongly suggested that this is the case. *See United States v. Marcus,* 560 U.S. 258,

130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010). "Plain error" is the federal analog to our palpable error rule. And it makes sense that a structural error would require reversal even when reviewed under a substantially higher standard, such as palpable error, given the nature of such an error.

■ But "structural error" exists "only in 'a very limited class of cases.'" *Neder*, 527 U.S. at 8, 119 S.Ct. 1827 (quoting *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Indeed, the Court has identified little more than half a dozen such errors: (1) "complete denial of counsel," *id.*, (2) "biased trial judge," *id.*, (3) "racial discrimination in selection of grand jury," *id.*, (4) "denial of self-representation at trial," *id.*, (5) "denial of public trial," *id.*, (6) "defective reasonable-doubt instruction," *id.*, and (7) "erroneous deprivation of the right to counsel of choice," *United States v. Gonzalez–Lopez*, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). And the Court has declined to find that even serious trial errors are structural errors. *See, e.g., Neder*, 527 U.S. at 8, 119 S.Ct. 1827 (holding "jury instruction that omits an element of the offense" was not structural error); *Arizona v. Fulminante*, 499 U.S. 279, 311, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (holding "admission of an involuntary confession" was not structural error).

This Court has further stated that "non-constitutional errors will rarely—perhaps never—rise to the level of being a structural error." *Crossland v. Commonwealth*, 291 S.W.3d 223, 232 (Ky.2009). The error McCleery complains of—prohibiting jurors from taking their notes back into the jury room for deliberation in violation of a rule of civil procedure—is not a constitutional error.

■ This error simply does not rise to the level of structural error. It did not "undermine the fundamental legitimacy of the judicial process." *Id.* It neither " 'infect[ed] the entire trial process,' and [thereby] 'necessarily render[ed] [the] trial fundamentally unfair,' " *Neder*, 527 U.S. at 8, 119 S.Ct. 1827 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)), nor did it "deprive [McCleery] of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as. fundamentally fair.' " *Id.* at 8–9, 106 S.Ct. 3101 (quoting *Rose*, 478 U.S. at 577–78, 106 S.Ct. 3101).

McCleery was otherwise tried by an impartial adjudicator and had the assistance of counsel. At best, then, this error was a trial error.

■ Just because the error does not rise to the level of structural error, however, does not mean it is not reversible under palpable-error review, which applies a lesser standard to less serious errors than does structural error. Still, the palpable-error rule requires a more serious error than the harmless-error rule before reversal is required. The criminal palpable-error rule states:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

RCr 10.26. A palpable error is clear and plain, affects the substantial rights of a party, and is more likely than other ordinary errors to affect the outcome of the case. *Miller v. Commonwealth*, 283

S.W.3d 690, 695 (Ky.2009). Even so, the defendant is not entitled to relief unless it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error. *Id.*

In this case, no manifest injustice resulted from the jurors' inability to take their notes into the jury room for deliberation. This was a short trial and the jury heard the testimony of seven witnesses over three and a half hours. Before reading the jury instructions, the trial judge clarified that the court would replay any witness's testimony at the jury's request, to aid in its deliberation in case of lapses of memory. The jury did not request to rehear any testimony and returned the verdict in approximately one. hour and fifteen minutes.

The error in not allowing the jurors to take their notes into the jury room for deliberation is not palpable. While this Court has stated that RCr 9.72 is mandatory, it has yet to reverse a conviction for its violation. In fact, the one case directly addressing the rule did so only to approve of what the trial court had done and to overrule a precedent that had been contrary to the rule even when decided. *See Barnett,* 317 S.W.3d at 55.

### III. Conclusion

McCleery has not shown entitlement to a directed verdict of acquittal, nor has he shown that the trial court's decision to bar the jury from using its notes in its deliberations was a palpable error. For those reasons, the judgment of the Breckinridge Circuit Court is affirmed.

All sitting. All concur.