RENDERED: OCTOBER 13, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0814-MR

CHRISTOPHER GRIBBINS          APPELLANT

v.        APPEAL FROM MARION CIRCUIT COURT
HONORABLE KAELIN G. REED, JUDGE
ACTION NO. 12-CR-00128

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Christopher Gribbins appeals *pro se* from the Marion Circuit Court's denial of his Kentucky Rule of Criminal Procedure (RCr) 11.42 motion for postconviction relief. We affirm.

Gribbins was convicted at trial of wanton murder and sentenced to twenty years' imprisonment. Our Supreme Court affirmed on direct appeal. *Gribbins v. Commonwealth*, 483 S.W.3d 370 (Ky. 2016). Gribbins then filed an

RCr 11.42 motion alleging his trial counsel was ineffective. The trial court denied the motion after holding a lengthy evidentiary hearing. This appeal followed.

To demonstrate ineffective assistance of counsel, Gribbins "must show that his counsel's performance was deficient and that but for the deficiency, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)." *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014). Of course, there is a "strong presumption that counsel's performance was reasonable" and "the trial court's factual findings and determinations of witness credibility are granted deference by the reviewing court." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016). Indeed, "when reviewing a trial court's findings of fact following an RCr 11.42 evidentiary hearing, an appellate court utilizes the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01." *Saylor v. Commonwealth*, 357 S.W.3d 567, 570-71 (Ky. App. 2012).

Of course, no attorney's representation can be absolutely perfect in all respects, especially in hindsight. Accordingly, the United States Supreme Court has explained that "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (internal quotation marks and

citation omitted). Particularly relevant here, "[t]o show ineffective assistance of counsel, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. A defense attorney must enjoy great discretion in trying a case, especially with regard to trial strategy and tactics." *Vincent v. Commonwealth*, 584 S.W.3d 762, 770 (Ky. App. 2019) (internal quotation marks and citations omitted).

In other words, "strategic choices made after [a] thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. So, "a trial counsel's choice of whether to call witnesses is generally accorded a presumption of deliberate trial strategy and cannot be subject to second-guessing in a claim of ineffective assistance of counsel." *Saylor*, 357 S.W.3d at 571. Because counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies[,]" *Harrington*, 562 U.S. at 107, 131 S. Ct. at 789, we will not "usurp or second guess counsel's trial strategy." *Vincent*, 584 S.W.3d at 771 (internal quotation marks and citations omitted). In short, the ineffective assistance of counsel test is "a very difficult standard to meet." *Id.* at 769.

We begin by quickly rejecting Gribbins' argument that counsel was ineffective for not insisting that the indictment be read to the jury. First, Gribbins

failed to address this issue at all during the evidentiary hearing. Thus, he has waived it. *Foley v. Commonwealth*, 17 S.W.3d 878, 889 (Ky. 2000)[1] ("Next, Foley asserts that the prosecutor met with prosecution witnesses prior to trial, provided them with portions of the discovery and instructed them on their testimony. . . . We agree with the trial judge that this claim has been waived because post-conviction counsel has not introduced any evidence to substantiate this allegation at the evidentiary hearing.").

Second, the claim fails on the merits. Under the former Criminal Code of Practice, the indictment was required to be read to the jury. *Farris v. Commonwealth*, 111 Ky. 236, 63 S.W. 615, 617 (1901). Even though *Farris* has not been overruled, the more modern Rules of Criminal Procedure "abandoned this requirement." *Calhoun v. Commonwealth*, 378 S.W.2d 222, 223 (Ky. 1964). *See also Lewis v. Commonwealth*, 642 S.W.3d 640, 643 (Ky. 2022) ("Before adoption of the Kentucky Rules of Criminal Procedure in 1963, Section 219 of the Criminal Code of Practice required either the clerk of the court or the Commonwealth's Attorney to read the indictment to the jury at some point before the conclusion of the Commonwealth's evidence. The failure to comply with this rule was grounds

---

[1] *Foley* was overruled on other grounds by *Stopher v. Conliffe*, 170 S.W.3d 307, 310 (Ky. 2005); *Stopher* was overruled by *Hodge v. Coleman*, 244 S.W.3d 102 (Ky. 2008). The overruling of *Foley* and *Stopher* revolved around whether an indigent postconviction petitioner may receive state funds under Kentucky Revised Statute (KRS) 31.185 – an issue not present here.

for reversal of the defendant's conviction. Kentucky has since adopted the Rules of Criminal Procedure, and RCr 9.42 replaced Section 219. RCr 9.42 makes reading the indictment to the jury an optional responsibility of the Commonwealth's Attorney.") (footnotes and citations omitted). [2]

Counsel cannot be ineffective for failing to insist on compliance with an already repealed requirement. Moreover, Gribbins has not shown how he suffered any concrete prejudice whatsoever due to the indictment not having been read to the jury. We affirm the denial of RCr 11.42 relief on this claim.

Gribbins' claim that his counsel was ineffective for not "request[ing] the trial court to inform the jurors that they would be allowed to take notes with them during deliberations" is similarly without merit. Appellant's Brief, p. 9 (all caps and bold font omitted). Gribbins again waived this claim by not addressing it at the evidentiary hearing. *Foley*, 17 S.W.3d at 889. In any event, Gribbins cannot demonstrate any prejudice stemming from his counsel's not asking the court to tell the jurors that they were permitted to take their notes into their deliberations. Because it is plain that Gribbins has not demonstrated prejudice, "we need not

---

[2] RCr 9.42(a) now only requires the Commonwealth to "state to the jury the nature of the charge and the evidence upon which the Commonwealth relies to support it . . . ." Gribbins has not shown error in the trial court's finding that the Commonwealth met that burden.

determine whether [Gribbins'] counsel's performance was adequate . . . ." *Hilton v. Commonwealth*, 603 S.W.3d 864, 868 (Ky. App. 2020).

Jurors are permitted under RCr 9.72 to take into their deliberations "any notes they may have made during the course of the trial . . . ." But Gribbins is unable to cite to any specific prejudice he suffered from the jurors not being told by the court that they could take their notes into their deliberations. The jurors' notes would not have altered the strong evidence against Gribbins. Indeed, our Supreme Court stressed on direct appeal that there were multiple witnesses who gave testimony supporting an instruction on intentional murder and multiple witnesses who gave testimony supporting an instruction on wanton murder. *Gribbins*, 483 S.W.3d at 376. In short, there were a host of witnesses who gave testimony damning to Gribbins and so there is not a reasonable probability that the result of the trial would have been different had the jurors been instructed that they could take their notes – which, of course, would logically have discussed the legion of damning testimony – into their deliberations.

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim, an RCr 11.42 petitioner must demonstrate counsel made errors "so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Prejudice is found under this standard when the defendant has shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

-6-

proceeding would have been different." *Commonwealth v. Searight*, 423 S.W.3d 226, 230 (Ky. 2014) (internal quotation marks, footnotes, and citations omitted).

Gribbins offers nothing specific to explain how there is a reasonable probability that the result of the trial would have been different if his counsel had asked the court to instruct the jurors that they could take their notes with them into their deliberations. As our Supreme Court has held, "the question should be absent counsel's errors, would the factfinder have had a reasonable doubt respecting guilt? . . . The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008) (internal quotation marks and citations omitted). Stated alternatively, "only if the factfinder would have had a reasonable doubt respecting guilt absent counsel's deficient performance is sufficient prejudice established." *Ford v. Commonwealth*, 628 S.W.3d 147, 160 (Ky. 2021).

We disagree with Gribbins that he has satisfied the stringent ineffective assistance of counsel standards simply because there were numerous witnesses and the jurors attempted to ask the court questions during deliberations. The trial did not last for such an exceedingly long time that the jurors were likely unable to recall with clarity the evidence presented. Also, the fact that the jurors apparently attempted to ask the court questions while deliberating is not

remarkable, does not unmistakably pertain to the lack of taking their notes into their deliberations, and does not satisfy the prejudice prong.

Finally, to satisfy the prejudice prong, Gribbins must show that he was deprived of a fair, reliable trial by counsel's error. *Searight*, 423 S.W.3d at 230. But our Supreme Court has already held that a trial court's improper refusal to allow jurors to take their notes into their deliberations – a much more blatant violation of RCr 9.72 than the situation described by Gribbins – was not an error which rendered the trial fundamentally unfair. *McCleery v. Commonwealth*, 410 S.W.3d 597, 605 (Ky. 2013). The failure to ask the trial court to instruct the jurors that they could take their notes into their deliberations simply did not snatch defeat from the hands of probable victory. *Brown*, 253 S.W.3d at 500.

In short, Gribbins offers only speculation that the jurors not being instructed that they could take their notes into their deliberations impacted the verdict negatively (from his perspective). Accordingly, Gribbins has failed to satisfy the prejudice prong. *See, e.g.*, *Hilton*, 603 S.W.3d at 869 (holding that speculation is insufficient to demonstrate prejudice).

Next, we find no error in the trial court's denial of relief based on Gribbins' claim that his counsel was ineffective for failing to address properly a plea offer allegedly made by the Commonwealth. It is undisputed that the

Commonwealth and Gribbins engaged in unsuccessful mediation prior to trial. But what actually occurred at mediation is disputed.

Gribbins asserts that, at mediation, the Commonwealth offered him a plea agreement recommending a total sentence of thirteen years' imprisonment to resolve both the murder charge and an assault charge stemming from another altercation in which Gribbins pistol-whipped another person earlier on the same day that he killed the murder victim. Gribbins presented what purported to be a document prepared by a defense investigator detailing the thirteen-year offer as well as a letter purportedly written by one of Gribbins' counsel to the Commonwealth discussing the thirteen-year offer. Gribbins further alleges counsel was ineffective for not making a counteroffer to the thirteen-year offer.

On the other hand, the Commonwealth relies on the testimony of the attorney who participated in the mediation on behalf of the Commonwealth and both of Gribbins' trial attorneys that the mediator recommended a thirteen-year total sentence, but the Commonwealth did not make that offer to Gribbins. The attorney for the Commonwealth testified that he did not make that offer to Gribbins because the murder victim's family was adamantly opposed to it. Further, the investigator flatly described as a forgery the document purporting to be a note by him discussing the thirteen-year plea offer. Gribbins' trial counsel similarly

testified that the letter purportedly written by him to the Commonwealth discussing the thirteen-year offer was also a forgery.

Faced with those diametrically opposed versions of events, the trial court had to believe one while rejecting the other. The trial court chose to believe the evidence presented by the Commonwealth and so concluded there was no thirteen-year plea offer and the documents purporting to discuss that offer were forgeries. Though Gribbins decries that conclusion, it is the trial court's sole prerogative to determine which evidence to believe and which to reject. *McGorman*, 489 S.W.3d at 736. The trial court's conclusions are amply supported by the evidence presented at the hearing.

Thus, Gribbins' counsel could not have been ineffective in failing to convey, and explain properly, an offer to Gribbins which the court reasonably concluded was non-existent. Similarly, counsel cannot be ineffective for failing to submit a counteroffer to a non-existent offer. Because Gribbins has shown neither deficient performance nor prejudice, we affirm the denial of relief on all claims stemming from counsel's handling of the alleged plea offer.

The final main issue raised by Gribbins is his contention that his counsel was ineffective for failing to present evidence at trial regarding the murder victim's alleged bad character and propensity for violence. Gribbins also relatedly

argues that counsel failed to meet with him sufficiently, did not provide him with the discovery, and failed to keep him properly abreast of their trial strategy.

Postconviction petitioners frequently argue that their counsel performed an inadequate investigation, but it is undisputed that Gribbins' counsel, via their investigator, interviewed numerous potential witnesses. However, counsel chose to call no witnesses besides Gribbins at trial.

At the hearing, the investigator testified that he met with Gribbins at the jail on many occasions. Gribbins' trial counsel each testified that they discussed the defense strategy with Gribbins in detail and he knew why they chose to not call the potential witnesses. Namely, counsel did not want to risk opening the door to the Commonwealth being able to introduce rebuttal evidence of Gribbins having pistol-whipped another person on the same day he shot and killed the murder victim. Scott Hayworth, one of Gribbins' attorneys, testified that Gribbins never said he wanted additional witnesses to testify. Hayworth also testified that counsel sufficiently discussed trial strategy with Gribbins.

James Lowry, Gribbins' additional trial counsel, testified that the defense was able to get its theory of the case (which involved alleged threats against Gribbins' place of business) before the jury via cross-examining the Commonwealth's witnesses, thus eliminating the need to call their own witnesses and thereby running the risk of opening the door to introduction of evidence

regarding the pistol-whipping. In addition, the investigator and Lowry both testified that they did not leave discovery materials at the jail because Gribbins did not want them to do so. The investigator added that Gribbins did not want the materials to remain at the jail because he did not trust other inmates.

Gribbins bears an especially heavy burden to receive relief based on the decision to not call additional witnesses because "a trial counsel's choice of whether to call witnesses is generally accorded a presumption of deliberate trial strategy and cannot be subject to second-guessing in a claim of ineffective assistance of counsel." *Saylor*, 357 S.W.3d at 571. Here, counsel testified that they believed they were able to get their theory of the case into evidence via cross-examining the Commonwealth's witnesses and thus intentionally decided not to call their own witnesses to avoid potentially allowing the Commonwealth to introduce evidence of the pistol-whipping.

In other words, the decision to refrain from calling additional witnesses was undeniably strategic. In hindsight, perhaps that strategy was wise. Perhaps it was not.[3] But it was conscious, deliberate, and based upon Gribbins'

---

[3] The trial court held that presenting evidence of the murder victim's character would not have allowed the Commonwealth to have introduced evidence of Gribbins having pistol-whipped another person shortly before shooting the murder victim. We need not examine the merits of that ruling nor definitively address whether the failure to call witnesses to testify about the victim's alleged bad character was sufficient to satisfy the deficient performance prong because Gribbins cannot satisfy the prejudice prong. *Hilton*, 603 S.W.3d at 868 ("In the instant case, we need not determine whether Hilton's counsel's performance was adequate on the issue raised on

attorneys' perceptions of the law and the negative potential consequences for

Gribbins if the defense presented evidence of the murder victim's character.

Appellate courts generally decline to second guess trial counsel's

knowingly strategic decisions. As our Supreme Court held:

> On review, as a court far removed from the passion
> and grit of the courtroom, we must be especially careful
> not to second-guess or condemn in hindsight the decision
> of defense counsel. A defense attorney must enjoy great
> discretion in trying a case, especially with regard to trial
> strategy and tactics. Under *Strickland*, *supra*, it is not
> enough that counsel erred and Appellant's trial reached
> an unfavorable result. Instead, Appellant must
> demonstrate that, absent counsel's errors, there exists a
> "reasonable probability" the jury would have reached a
> different verdict. *Id.* Inasmuch as we might not
> necessarily agree with trial counsel's trial strategy and
> may likely have employed other tactics, we do not
> believe that in light of all of the circumstances his
> performance was "outside . . . the wide range of
> professionally competent assistance." *Id.* at 690, 104 S.
> Ct. at 2066.

*Harper v. Commonwealth*, 978 S.W.2d 311, 317 (Ky. 1998). We therefore are

highly skeptical that the decision to not call additional witnesses to attack the

victim's alleged bad character was sufficient to constitute deficient performance.

However, even if we were to assume (solely for purposes of

argument) that Gribbins has satisfied the deficient performance prong, he has not

---

this appeal because Hilton fails to demonstrate prejudice resulting from counsel's alleged
deficient performance.").

-13-

satisfied the prejudice prong of the ineffectiveness test. The evidence against Gribbins was damning. Our Supreme Court noted that *three* witnesses gave testimony to support giving an intentional murder instruction, including one who testified that Gribbins "initially tried to strike [the victim] with the gun, but failed to make contact" and another who testified that he saw Gribbins "walk towards [the victim], brandish a gun, and shoot him." *Gribbins*, 483 S.W.3d at 376. *Multiple* other witnesses gave testimony to support the wanton murder conviction. *Id.* ("As Gribbins readily acknowledges, multiple witnesses testified to Gribbins's pistol whipping of [the murder victim]. In using a loaded handgun, as a club to beat [the victim], Gribbins consciously disregarded a substantial and unjustifiable risk that the handgun might accidentally be discharged and his conduct plainly created a grave risk of death to [the victim] under circumstances manifesting an extreme indifference to human life."). Given that overwhelming evidence and the minimum sentence he received, Gribbins has not demonstrated a reasonable probability that calling witnesses to testify about the murder victim's character would have changed the outcome of the trial.

We also affirm the denial of relief regarding the alleged insufficient consultations with Gribbins by counsel and alleged failure to provide him with discovery. There was ample testimony at the hearing to support the trial court's conclusion that counsel was not deficient as they met with Gribbins sufficiently,

adequately discussed trial strategy with him, and declined to leave discovery at the jail at his request.

Finally, we affirm denying relief on the cumulative error claim. "The defense counsel was not ineffective as a result of cumulative error. In view of the fact that the individual allegations have no merit, they can have no cumulative value." *McQueen v. Commonwealth*, 721 S.W.2d 694, 701 (Ky. 1986).[4]

For the foregoing reasons, the Marion Circuit Court is affirmed.


ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Christopher Gribbins, *pro se*          Daniel Cameron
La Grange, Kentucky                     Attorney General of Kentucky

                                        Stephanie L. McKeehan
                                        Assistant Attorney General
                                        Frankfort, Kentucky

---

[4] We reject Gribbins' request for relief on the scattershot issues presented in his brief which are not discussed herein. For example, Gribbins now seems to argue that his offense did not constitute wanton murder. In addition to not showing where he raised that argument in his RCr 11.42 motion, Gribbins' argument is *directly* contrary to our Supreme Court's holding on direct appeal that "there was sufficient evidence presented at trial to justify the wanton murder instruction." *Gribbins*, 483 S.W.3d at 376. In sum, any issue in Gribbins' brief which is not discussed in this Opinion was not adequately presented to the trial court, is redundant, or is otherwise without merit.