RENDERED: AUGUST 1, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0293-MR

DONALD MELTON          APPELLANT

v.          APPEAL FROM ROWAN CIRCUIT COURT
HONORABLE DAVID A. BARBER, JUDGE
ACTION NO. 21-CR-00089

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CALDWELL, JUDGE: After a jury trial, Donald Melton ("Melton") was convicted by the Rowan Circuit Court of reckless driving and first-degree fleeing and evading. He received a total sentence of two years and six months of imprisonment. Melton appeals his conviction as a matter of right, asserting the trial court erred by not entering a directed verdict on the fleeing and evading charge. We affirm.

# BACKGROUND

Sometime in the early morning hours of August 18, 2020, Melton drove his vehicle into the parking lot for the Kentucky State Police ("KSP") Post 8 in Morehead, Kentucky. Melton parked across markings that designated multiple parking spaces of the small lot. He remained in his vehicle and did not approach KSP Post 8. No other vehicles were present in the lot when someone noticed Melton and found him suspicious. As no state troopers were present or available at the time, a KSP dispatcher called the Morehead Police Department ("MPD") and requested that someone investigate the vehicle. Two members of MPD, Officer Erik Caudill and Officer Steve Justice, responded.

Arriving first on the scene, Officer Caudill parked across the parking lot from Melton's vehicle and activated the emergency lights in his cruiser. Officer Justice arrived shortly thereafter and parked alongside Officer Caudill, also activating his emergency lights. The two officers approached, and Melton told them from his vehicle that he wanted to make a complaint about his ex-wife or former significant other. Melton described a domestic incident which he alleged occurred in a Rowan County residence with an address outside of Morehead city limits.

Considering the matter outside of MPD jurisdiction, Officer Caudill sent a request to dispatch for an available sheriff's deputy to speak with Melton

about his complaint. Officer Justice reported to Melton the jurisdictional dilemma and told him it was necessary to wait for the arrival of a deputy. Melton remained in his vehicle with the engine running. Both officers would later recall that Melton acted very nervous and was sweating heavily despite the air conditioning in his vehicle running. As he was communicating with dispatch regarding the request for a deputy, Officer Caudill had stepped to the rear of Melton's vehicle and ran the license plate number.

Soon thereafter, Melton rolled down the window of his vehicle and asked why it was taking so long. As Officer Justice responded to him, Melton suddenly shifted his vehicle into reverse and accelerated backward for a short distance before shifting to drive and accelerating forward. Officer Justice responded by attempting to enter the vehicle through the passenger door and was pulled by the vehicle before letting go and running alongside it while commanding Melton to halt. Melton ignored this and drove from the parking lot through a grassy area and over a ditch before continuing to flee on the roadway.

Both officers entered their cruisers and pursued Melton. As Melton made his way toward Interstate 64 ("I-64"), he ran a stop sign and a red light before reaching an entrance ramp for I-64. During the pursuit, Officer Caudill reported to dispatch that Melton was reaching speeds in excess of 90 miles per hour. A short distance after entering I-64, Melton lost control of his vehicle and

left a long trail of debris before he crashed into the concrete center barrier. Upon reaching Melton's vehicle, the officers found the impact had rendered him unconscious and locked inside the wrecked vehicle. The officers broke a window from Melton's vehicle to drag him from the vehicle to a safe distance before calling for emergency services.

After emergency personnel responded to the scene, Officer Justice followed the ambulance that transported Melton to the hospital. As he suspected Melton was under the influence of methamphetamine, Officer Justice sought a blood test to screen for controlled substances. While Melton was still unconscious, Officer Justice read to him an implied consent form and requested a blood draw for a drug screen. The subsequent lab results indicated the presence of methamphetamine.

On April 29, 2021, a Rowan County grand jury indicted Melton on two counts of first-degree wanton endangerment, one count of first-degree fleeing and evading, one count of driving under the influence, and one count of reckless driving. A suppression hearing concerning the results of the blood test occurred before the trial court in June of 2022. Officer Justice was the only witness to testify. The trial court granted the motion and excluded the drug screen from evidence. Prior to trial, both counts of first-degree wanton endangerment and the

driving under the influence charge were dismissed by motion of the Commonwealth.

A jury trial occurred on January 3, 2024. Officer Caudill was the sole witness to testify during the guilt phase. After convicting Melton of first-degree fleeing and evading and reckless driving, the jury recommended a sentence of two-and-a-half years' imprisonment. A judgment which imposed the recommended sentence was entered by the trial court on February 8, 2024. This appeal follows. Additional facts will be developed as necessary.

## STANDARD OF REVIEW

For the sole issue Melton brings on appeal, he alleges the trial court committed reversible error by failing to enter a directed verdict on the first-degree fleeing and evading charge. He argues the Commonwealth failed to meet its burden of proof under KRS[1] 520.095(1)(a)(4) under which a person is guilty of fleeing or evading police in the first-degree: "(w)hen, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and . . . [b]y fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property[.]" *Id*.

---

[1] Kentucky Revised Statutes.

Melton argues the evidence was insufficient to show his actions caused a substantial risk of serious physical injury or death to any person or property. Melton made no argument for a directed verdict which alluded to this element of the criminal statute. He concedes the issue is unpreserved and requests palpable error review pursuant to RCr[2] 10.26.

Unpreserved error amounts to palpable error only when manifest injustice is shown. RCr 10.26. Moreover:

> For an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. A palpable error must involve prejudice more egregious than that occurring in reversible error. A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis boils down to is whether the reviewing court believes there is a substantial possibility that the result in the case would have been different without the error. If not, the error cannot be palpable.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks and citations omitted).

## ANALYSIS

The Commonwealth had to prove Melton had the "intent to elude or flee" when he "knowingly or wantonly disobey[ed] a direction to stop his . . . motor vehicle, given by a person recognized to be a police officer." KRS

[2] Kentucky Rules of Criminal Procedure.

-6-

520.095(1)(a). These elements largely mirror those for second-degree fleeing or evading under KRS 520.100 which are pertinent to flight by motor vehicle.[3] However, first-degree fleeing or evading additionally requires proof of one of the aggravating factors set forth in KRS 520.095(1)(a)1.-4. *See Lawson v. Commonwealth*, 85 S.W.3d 571, 575–76 (Ky. 2002), *overruled on other grounds by Hall v. Commonwealth*, 551 S.W.3d 7 (Ky. 2018) (citations omitted). In Melton's case, the relevant factor is set forth in KRS 520.095(1)(a)4.: "by fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property[.]"

Melton argues that the Commonwealth failed to prove his flight had created a substantial risk of serious physical injury or death to any person or property. Melton insists the evidence of this factor, if any, was wholly insufficient. He argues the Commonwealth presented no testimony about other citizens driving on any roads along Melton's path at the time of the pursuit and motor vehicle accident around 3 a.m. He additionally argues that Officer Caudill gave no specific testimony at trial that he felt unsafe or in danger during the vehicle chase.

---

[3] The relevant language of KRS 520.100 differs from 520.095 in that it contains an additional word requiring that the defendant disobeyed "a *recognized* direction" to halt their vehicle, and an alternate word requiring that the direction must have been given by a person recognized to be a "*peace* officer[.]" (emphasis added).

It is undisputed that no persons aside from Melton were injured in the chase or the accident at its conclusion. Furthermore, as emphasized in Melton's argument, there was no testimony describing any other traffic or pedestrians in the path of the chase. However, the Commonwealth was not required to prove a particular passerby was put at risk. *McCleery v. Commonwealth*, 410 S.W.3d 597, 602 (Ky. 2013). Furthermore, "the fleeing or evading statute does not require risk to multiple persons or even actual injury." *Eversole v. Commonwealth*, 600 S.W.3d 209, 220 (Ky. 2020). Where "[t]he risk of death or serious physical injury to [a police officer pursuing the defendant] was substantial" the evidence of first-degree fleeing and evading is "sufficient to survive [a] motion for directed verdict." *Id.*

"A substantial risk is a risk that is ample, considerable in degree or extent, and true or real, not imaginary . . . [and] not every hypothetical scenario of 'what might have happened' represents a substantial risk," *McCleery*, 410 S.W.3d at 602 (internal quotation marks and citations omitted). Each case presenting a question of whether a defendant has created a "substantial risk" of death or serious physical injury by fleeing police is evaluated upon its own unique circumstances, and upon the proof and reasonable inferences that can be drawn from the evidence. *Culver v. Commonwealth*, 590 S.W.3d 810, 817 (Ky. 2019) (citing *Bell v.*

*Commonwealth*, 122 S.W.3d 490, 497 (Ky. 2003), and *Lofthouse v.*

*Commonwealth*, 13 S.W.3d 236, 241 (Ky. 2000)).

While Melton argues there was insufficient evidence that the MPD

officers were at substantial risk of injury, he does acknowledge Officer Caudill's

testimony that he was driving at an excessive rate of speed. However, Melton

dismisses this as insufficient, arguing that, as the MPD officers had to run to their

vehicles while he had already begun fleeing, Officer Caudill's self-reported speed

of 90 mph only reflects what was necessary to overcome Melton's own head start.

Melton's counsel specifically pressed Officer Caudill on this issue

during his cross-examination. The officer testified that during the pursuit at the

time Melton was about to enter I-64, he had reached a speed of 90 mph himself and

Melton was creating greater distance between the two vehicles. Officer Caudill

testified that this was the basis for his calculation and the contemporaneous report

to dispatch that Melton was reaching speeds in excess of 90 mph during the

pursuit.

In deciding whether a criminal defendant is entitled to a directed

verdict, "the trial court must draw all fair and reasonable inferences from the

evidence in favor of the Commonwealth" and "must assume that the evidence for

the Commonwealth is true[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187

(Ky. 1991). Questions "as to the credibility and weight to be given to such

testimony" are reserved for the jury. *Id.* It would clearly not be unreasonable for the jury to conclude that Melton was exceeding the speed limit before crashing on I-64. "When speeding occurs with other factors (for example, disobeying stop signs and red lights; inclement weather; and circumstances in which other vehicles and pedestrians are at risk of serious physical injury indicated by the need to get out of the defendant's way, or likely to be put at such risk, such as in congested areas with schools and shopping centers) it may be enough to establish a substantial risk of serious physical injury." *Culver*, 590 S.W.3d at 817 (citing *Brown v. Commonwealth*, 297 S.W.3d 557, 560 (Ky. 2009), *as modified* (Dec. 15, 2009); *Lawson*, 85 S.W.3d 571; and *McCleery*, 410 S.W.3d 597).

Melton additionally asserts the Commonwealth's voluntary dismissal of the charge of wanton endangerment in the first-degree supports his allegation of reversible error. Melton points out that one of the charges had been based upon an allegation he had placed Officer Caudill in substantial danger when he had initially accelerated in reverse.[4] Melton implies the voluntary dismissal of the wanton-endangerment charge was a concession by the Commonwealth that it was unable to

_____

[4] During his testimony at the suppression hearing, Officer Justice testified that Officer Caudill was at the rear of Melton's vehicle running the license plate number when Melton asked what was taking so long, so he believed Officer Caudill was in the vehicle's path at the moment Melton had accelerated backward. However, he testified that he later learned that Officer Caudill had retreated to a position outside of his line of vision just before the vehicle actually began accelerating backwards. At trial, Officer Caudill testified that he had been standing in the rear path of Melton's vehicle when he initially saw the reverse lights activate, he leapt out of the path just before Melton had revved the engine and accelerated backward.

prove the substantial risk element of KRS 520.095(1)(a)4. We find this argument unpersuasive. The Commonwealth's decision to dismiss the wanton endangerment charge appears to have been more closely related to the trial court's exclusion of evidence that Melton had been under the influence of methamphetamine.

First-degree wanton endangerment and first-degree fleeing or evading do involve similar elements. *Culver*, 590 S.W.3d at 813. Prior to the enactment of KRS 520.095, the act of fleeing the police by motor vehicle was typically prosecuted under the wanton endangerment statutes. *Bell*, 122 S.W.3d at 496. Nonetheless, unlike first-degree fleeing or evading, first-degree wanton endangerment requires an additional and distinct demonstration. The Commonwealth must prove that the conduct in question took place "under circumstances manifesting *extreme indifference to the value of human life*" to obtain a conviction for first-degree wanton endangerment. KRS 508.060(1) (emphasis added).

The element of circumstances manifesting extreme indifference to human life has been described as "aggravated wantonness." *Hurt v. Commonwealth*, 409 S.W.3d 327, 331 (Ky. 2013) (quoting *Graves v. Commonwealth*, 17 S.W.3d 858, 863 (Ky. 2000)). Commonly cited examples of aggravated wantonness include "firing a gun into an occupied space, planting a bomb in a public place, or derailing a speeding train." *Hurt*, 409 S.W.3d at 331

-11-

(citations omitted). Aggravated wantonness is also frequently discussed in a number of Kentucky cases involving unintentional vehicular homicides where a defendant was under the influence. *See Brown v. Commonwealth*, 174 S.W.3d 421, 426 (Ky. 2005), *as modified* (Jul. 7, 2005) (citing *Hamilton v. Commonwealth*, 560 S.W.2d 539, 543 (Ky. 1977); *Estep v. Commonwealth*, 957 S.W.2d 191 (Ky. 1997); *Love v. Commonwealth*, 55 S.W.3d 816, 827 (Ky. 2001); *Cook v. Commonwealth*, 129 S.W.3d 351, 362–63 (Ky. 2004)).

In contrast, the Commonwealth is not required to prove extreme indifference to the value of human life to obtain a first-degree fleeing or evading conviction. *See* KRS 520.095. Moreover, KRS 508.060(1) requires the Commonwealth to prove the conduct in question "create[d] a substantial danger of death or serious physical injury *to another person*" for a first-degree wanton endangerment conviction. However, to secure a conviction for first-degree fleeing or evading by virtue of the "substantial danger" aggravator in KRS 520.095(1)(a)4., the Commonwealth may prove the conduct at issue "create[d] substantial risk, of serious physical injury or death to any person *or property*[.]" (Emphasis added.) By the plain language of the statute, merely creating a substantial risk of serious property damage is within the scope of first-degree fleeing or evading.

In sum, we see no relevance to the Commonwealth's motion to dismiss the charge of first-degree wanton endangerment.

"If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Benham*, 816 S.W.2d at 187. Here, based on the testimony of Officer Caudill, a reasonable jury could conclude that one or both MPD officers could have been seriously injured under the circumstances created by Melton's flight. Officer Caudill described leaping from the path of Melton's vehicle because he thought he might be run over. He testified that Melton entered I-64 well in excess of 90 mph driving in a manner that caused him to lose control of his vehicle causing a quarter mile wreckage scene. He testified that when he and his partner extracted Melton from the wrecked vehicle, the damage to the vehicle and a burning smell led them to believe a gasoline explosion or fire might be imminent. Regardless of whether he stated with specificity that he felt unsafe during the vehicle chase, a reasonable jury could conclude from Officer Caudill's testimony that there had been a substantial risk of physical injury to himself and/or his partner throughout the pursuit of Melton and assistance to Melton after the collision.

Melton cannot demonstrate that it was unreasonable for the jury to find him guilty of the charge of first-degree fleeing and evading. Consequently,

we detect no palpable error in the trial court's failing to issue *sua sponte* a directed verdict in Melton's favor on this charge.

## CONCLUSION

For the foregoing reasons, Melton's conviction is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Jennifer Wade
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky